NISSAN MOTOR MFG. CORP., U.S.A.,
Plaintiff–Appellant,

v.

The UNITED STATES,
Defendant–Appellee.

No. 89–1040.

United States Court of Appeals,
Federal Circuit.

Sept. 8, 1989.

Gale T. Cumins, Sharretts, Paley, Carter & Blauvelt, P.C., New York City, argued for plaintiff-appellant. With her on the brief was Ned H. Marshak.

Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Dept. of Justice, New York City, argued for defendant-appellee. With him on the brief were John R. Bolton, Asst. Atty. Gen. and David M. Cohen, Director.

Before MARKEY, Chief Judge, FRIEDMAN and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

Nissan Motor Mfg. Corp., U.S.A. (Nissan) appeals from the summary judgment of the United States Court of International Trade holding that machinery imported by Nissan from Japan into a foreign trade zone subzone for use in the production of motor vehicles is subject to duty as prescribed by the United States Customs laws. *Nissan Motor Mfg. Corp., U.S.A. v. United States*, 693 F.Supp. 1183 (Ct. Int'l Trade 1988). We affirm.

*Background*

The Foreign Trade Zones Act, 19 U.S.C. §§ 81a–81u (1982), authorizes the establishment of foreign trade zones within the United States. The Act is administered by a Board which has authority "to grant to corporations ["public" and "private" as defined in the Act, 19 U.S.C. § 81a] the privilege of establishing, operating, and maintaining foreign-trade zones in or adjacent to ports of entry under the jurisdiction of the United States." 19 U.S.C. § 81b(a). "Merchandise" may be brought into a foreign trade zone for the purposes set forth in the statute "without being subject to the customs laws of the United States." 19 U.S.C. § 81c (1982).

According to the trial court:

In 1952 the Board promulgated regulations pursuant to 19 U.S.C. § 81h to authorize "zones for specialized purposes" or "subzones" in areas separate from existing free trade zones "for one or more of the specialized purposes of storing, manipulating, manufacturing, or exhibiting goods" when the Board finds that existing or authorized zones will not serve adequately the convenience of commerce with respect to the proposed purposes. 17 Fed.Reg. 5316 (June 11, 1952), now codified without amendment at 15 C.F.R. § 400.304 (1988). In contrast to general purpose zones where a municipal corporation leases a portion of the zone to firms that subsequently locate within

that zone, subzones are generally used by a single firm.

693 F.Supp. at 1185. A foreign trade zone subzone was established at Nissan's motor vehicle manufacturing and assembly plant in Smyrna, Tennessee.

Nissan imported production machinery for use in the subzone which consisted of a highly automated, integrated system of industrial robots, automated conveyor and stamping systems, and a complex computerized interface. Nissan requested a ruling from the United States Customs Service under 19 C.F.R. § 177.1(a)(1) (1988) regarding its obligation for duties. Nissan noted that it was uncertain whether the proposed final configuration of the machinery would be capable of full-scale production of motor vehicles and that the machinery needed to be assembled, installed and tested. Nissan stated that based on these tests some or all of the machinery might be returned to the foreign manufacturers, replaced, redesigned, or scrapped.

Customs decided, based on these facts, that production equipment imported into Nissan's subzone was not "merchandise" for purposes of the Foreign Trade Zones Act and was therefore dutiable. Customs deferred assessment of duties, however, until the machinery was completely installed and tested in full-scale production of motor vehicles in the subzone. C.S.D. 82–103, 16 Cust. Bull. 869, 870 (March 4, 1982).

After installation and testing, Customs required that formal duty-paid entries be made even though the equipment was to remain in the subzone. The production equipment was valued at approximately $116,314,883 with over $3,000,000 in assessed duties. Nissan entered the merchandise as required by Customs and, upon liquidation, filed a protest. The protest was denied and Nissan commenced this proceeding. The Court of International Trade held that "[b]ased on the language of the Foreign Trade Zones Act, as amended, and the relevant legislative history ... [Nissan's] production machinery and related capital equipment are dutiable." 693 F.Supp. at 1189.

## OPINION

Congress authorized the creation of foreign trade zones in the Foreign Trade Zones Act of 1934, Pub.L. No. 566, 64 Stat. 249 (1950) (codified as amended at 19 U.S.C. § 81c (1982)). In 1950, section 3 of the Act was amended to provide:

Foreign and domestic *merchandise of every description*, except such as is prohibited by law, may, without being subject to the customs laws of the United States, except as otherwise provided in this chapter, be brought into a zone and *may be stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured* except as otherwise provided in this chapter, and be exported, destroyed, or sent into customs territory of the United States therefrom, in the original package or otherwise; but when foreign merchandise is so sent from a zone into customs territory of the United States it shall be subject to the laws and regulations of the United States affecting imported merchandise....

19 U.S.C. § 81c (1982) (emphasis added).

Nissan contends that the trial court erred in concluding that Customs could properly impose a duty on the equipment, because a foreign trade zone is considered to be outside the Customs territory of the United States. It argues that merchandise entered into a zone becomes subject to duty only if the merchandise is thereafter sent "into the customs territory of the United States."

The government urges that the Foreign Trade Zone Act does not authorize the use of a foreign trade zone to avoid or defer payment of duties on production equipment installed, used and consumed in the foreign trade zone. Such equipment, according to the government, is not "merchandise" within the meaning of the Act and the installation and use of the equipment are not covered by the activities enumerated in the Act.

The Court of International Trade rejected Nissan's position and held that "imports ... used or intended to be used to produce motor vehicles" are not within the activities enumerated in 19 U.S.C. § 81c (1982). 693 F.Supp. at 1186. Applying a general rule of statutory construction that the expression of one thing is the exclusion of the alternative, *expressio unius est exclusio alterius*, the court stated that "[n]one of the activities that Congress identified in its comprehensive list permit [sic] installation or operation of production equipment without payment of duties." *Id.* The court also pointed to the legislative history of the 1950 amendment, S.Rep. No. 1107, 81st Cong., 2d Sess., *reprinted in* 1950 U.S. Code Cong. & Admin.News 2533, 2535–36, which stated that "[t]he amended proviso would not authorize consumption of merchandise in a zone...."

Nissan's reading of the Act to mean that duties cannot be imposed on any article brought into a foreign trade zone unless or until it is sent into the Customs territory of the United States is overbroad. The Court of International Trade was correct in our view in determining that Congress signalled its intention to make the imposition of immediate duties dependent on the operations that occur in a foreign trade zone when it listed the activities that could be performed on merchandise brought into a zone. The fact that a comprehensive listing is set forth in the statute indicates that Congress did not intend a blanket exclusion from Customs duties irrespective of what is done with the imported merchandise.

The activities performed by Nissan in the foreign trade zone subzone with the imported equipment are not among those permitted by a plain reading of the statute. Section 81c provides that merchandise brought into a foreign trade zone may be "stored, sold, exhibited, broken up, repacked, assembled, distributed, sorted, graded, cleaned, mixed with foreign or domestic merchandise, or otherwise manipulated, or be manufactured...." 19 U.S.C. § 81c. The Act does not say that imported equipment may be "installed," "used," "operated" or "consumed" in the zone, which are the kinds of operations Nissan performs in the zone with the subject equipment. Alternative operations of a different character should not be implied when Congress has made so exhaustive a list. *See United States v. Douglas Aircraft Co.,* 510 F.2d 1387, 1392 (CCPA 1975).

The 1950 amendment to the Foreign Trade Zones Act and its legislative history supports the foregoing reading of the statute. Prior to 1950, duties had to be paid on merchandise which remained within a zone for over two years. In 1950 the Act was amended to remove this requirement. In doing so, the Senate Report explained:

> The present absolute requirement for payment of duties on merchandise obtaining a privileged status under the proviso would be eliminated. Duties and taxes would be payable in accordance with the finding only if and when the merchandise was sent into customs territory. *The amended proviso would not authorize consumption of merchandise in a zone,* but would authorize its exportation or destruction without the payment of the liquidated duties and determined taxes thereon.

S.Rep. No. 1107, 81st Cong., 1st Sess., *reprinted in* 1950 U.S.Code Cong. & Admin. News 2533, 2535–36 (emphasis added). Moreover, the 1950 amendment for the first time authorized manufacturing and exhibiting to be conducted within a zone. Pub.L. 566, 64 Stat. 249 (1950). The amendment and its legislative history give no indication that manufacturing equipment can be entered duty free, which, of course, is consistent with the quoted statement that exemption from duty is not permitted for merchandise to be consumed within the zone.

The Customs Service, in a decision relating to other production machinery from Japan, has similarly ruled that "the list [of activities] does not permit an article to be brought into a zone, free of duty, to be used as production equipment to make other articles." *See* C.S.D. 79–418, 13 Cust. Bull. 1627, 1629–30 (May 24, 1979). *See also* S.Rep. No. 308, 98th Cong., 2d Sess. 35–36, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4910, 4944–45, which, in dis-

cussing the 1984 amendments to the Foreign Trade Act, described the "current law" as providing that the "exemption does not apply to machinery and equipment that is imported for use (for manufacturing or the like) within a foreign trade zone."

Nissan relies upon the case of *Hawaiian Indep. Refinery v. United States*, 460 F.Supp. 1249 (Cust.Ct.1978), in support of its position. The merchandise there involved was crude oil which was entered into a foreign trade zone for manufacture into fuel oil products. This, of course, is an activity delineated by the Act and entry into the zone was exempted from Customs duties. Thereafter, a portion of the crude oil was consumed in the manufacturing process and Customs assessed duty on the theory that there had been a "constructive" entry into the Customs territory of the United States. In holding that the assessment was improper, the Court of International Trade did not have to deal with the question at issue here of whether the initial entry into the zone was exempt. Clearly, in that case the crude oil was exempt at the time of entry. Thus, the Court of International Trade properly concluded that the *Hawaiian Indep. Refinery* case was not dispositive of this case.

We are convinced that the Court of International Trade correctly determined that the importation by Nissan of the machinery and capital equipment at issue into the foreign trade zone subzone was not for the purpose of being manipulated in one of the ways prescribed by the statute. Instead it was to be used (consumed) in the subzone for the production of motor vehicles. Under the plain language of the 1950 amendment to the Act and the legislative history of that amendment, and Customs' published decision interpreting the Act as amended, such a use does not entitle the equipment to exemption from Customs duties. Accordingly, the judgment of the Court of International Trade is affirmed.

AFFIRMED.