STATE of Minnesota, Respondent,

v.

Ryan Leroy SMITH, Appellant.

A15-0570

Supreme Court of Minnesota.

Filed: July 19, 2017

Court of Appeals

Lori Swanson, Attorney General, James B. Early, Michael Everson, Assistant Attorneys General, Saint Paul, Minnesota;

and Joe Walsh, Mille Lacs County Attorney, Milaca, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

## OPINION

STRAS, Justice.

The legal question presented in this case is whether appellant Ryan Leroy Smith's 2005 gross-misdemeanor conviction of criminal vehicular operation is a "prior impaired driving conviction" under Minn. Stat. § 169A.03, subd. 20 (2008). The question is relevant here because Smith's current offense, driving while impaired, was enhanced to a first-degree crime based on the existence of three prior impaired-driving convictions, including Smith's 2005 criminal-vehicular-operation conviction. The court of appeals held that Smith's current offense was properly charged and adjudicated as a first-degree crime because his 2005 conviction was a qualifying offense. *State v. Smith*, No. A15-0570, 2016 WL 1081154, at *1-2 (Minn.App. Mar. 21, 2016) (analyzing Minn. Stat. § 169A.03, subd. 20). We conclude that, because Smith's 2005 conviction is not included in the list of qualifying offenses in Minn. Stat. § 169A.03, subd. 20, there was insufficient evidence to convict Smith of first-degree driving while impaired. Accordingly, we reverse.

## FACTS

This case arises out of Smith's lengthy history of impaired-driving offenses, having been convicted in 2001 of aggravated driving while impaired, *see* Minn. Stat.

§ 169.129 (1998), and separately of operating a motor vehicle with a blood-alcohol content of .10 or greater within 2 hours of driving, *see* Minn. Stat. § 169A.20, subd. 1(5) (2002); and in 2005 of criminal vehicular operation resulting in bodily harm, *see* Minn. Stat. § 609.21, subd. 2b(6) (2004). Under Minnesota law, certain prior impaired-driving convictions increase the severity of subsequent convictions by enhancing the degree of the crime, resulting in longer sentences and, in some cases, changing the classification of the crime from a misdemeanor to a gross misdemeanor or felony. *See* Minn. Stat. §§ 169A.20, 169A.24-27, 169A.275-76 (2016).

This case involves one of those enhancements. In 2010, police officers stopped Smith and arrested him for driving while impaired. The State charged Smith with two counts of first-degree driving while impaired, one for driving while under the influence of alcohol, Minn. Stat. § 169A.20, subd. 1(1), and the other for having a blood-alcohol content of .08 or more within 2 hours of driving, Minn. Stat. § 169A.20, subd. 1(5).[1] To convict Smith of either count, the State had to prove that Smith committed the offense "within ten years of the first of three or more qualified prior impaired driving incidents." Minn. Stat. § 169A.24, subd. 1(1).

The parties agree that Smith's 2001 convictions of driving while impaired and having a blood-alcohol content of .10 or greater within 2 hours of operating a motor vehicle are "qualified prior impaired driving incidents." But the parties disagree about whether the 2005 conviction of criminal vehicular operation resulting in bodily harm is a "qualified prior impaired driving

---

[1]. The State also charged Smith with driving over the speed limit, Minn. Stat. § 169.14, subd. 2(a) (2016), and driving after the revocation of his driving privileges, Minn. Stat.

§ 171.24, subd. 2 (2016). Smith pleaded guilty to these counts, neither of which is at issue here.

incident[ ]." At trial, after preserving his objection to the use of the 2005 conviction to enhance his current driving-while-impaired offense, Smith stipulated that he had three qualified prior impaired-driving incidents. The jury found Smith guilty of both counts of first-degree driving while impaired. The district court sentenced Smith to 72 months in prison and 5 years of conditional release.

On appeal, Smith has continued to claim that the evidence was insufficient to convict him of first-degree driving while impaired because one of the three prior convictions used to enhance his offense to a first-degree crime—his 2005 conviction of criminal vehicular operation resulting in bodily harm—is omitted from the list of qualifying offenses in Minn. Stat. § 169A.03, subd. 20. The court of appeals agreed that the list of qualifying offenses does not include the version of the criminal-vehicular-operation statute under which Smith was convicted. *State v. Smith*, No. A15-0570, 2016 WL 1081154, at *2 (Minn.App. Mar. 21, 2016). Even so, the court concluded that the evidence was sufficient to convict Smith of first-degree driving while impaired because excluding Smith's 2005 conviction from the list of qualifying offenses would lead to an absurd result, regardless of the statute's plain language. *Id.*

## ANALYSIS

■ The question in this case is whether Smith's 2005 criminal-vehicular-operation conviction is a "qualified prior impaired driving incident[ ]" under Minn. Stat. § 169A.24, subd. 1(1). If it does, then Smith's 2010 driving-while-impaired offense was properly charged and adjudicated as a first-degree offense, which requires—as relevant here—three or more prior impaired-driving incidents. *See id.* If it does not, then the evidence was insuffi-

cient to convict Smith of first-degree driving while impaired because he would have had only two prior impaired-driving incidents on his record rather than three. *See id.* Resolving this issue presents a question of statutory interpretation that we review de novo. *Schwanke v. Minn. Dep't of Admin.*, 851 N.W.2d 591, 593 (Minn. 2014).

Minnesota Statutes § 169A.24, subdivision 1(1), states that a person is guilty of first-degree driving while impaired if the person "commits the violation within ten years of the first of three or more qualified prior impaired driving incidents." By statute, "qualified prior impaired driving incident[s]" include "prior impaired driving convictions," Minn. Stat. § 169A.03, subd. 22 (2016), which consist of "prior conviction[s] under:"

(1) section 169A.20 (driving while impaired); 169A.31 (alcohol-related school bus or Head Start bus driving); or 360.0752 (impaired aircraft operation);

(2) section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6);

(3) Minnesota Statutes 1998, section 169.121 (driver under influence of alcohol or controlled substance); 169.1211 (alcohol-related driving by commercial vehicle drivers); or 169.129 (aggravated DWI-related violations; penalty);

(4) Minnesota Statutes 1996, section 84.91, subdivision 1, paragraph (a) (operating snowmobile or all-terrain vehicle while impaired); or 86B.331, subdivision 1, paragraph (a) (operating motorboat while impaired); or

(5) an ordinance from this state, or a statute or ordinance from another state, in conformity with any provision listed in clause (1), (2), (3), or (4).

A "prior impaired driving conviction" also includes a prior juvenile adjudication that would have been a prior im-

paired driving conviction if committed by an adult.

Minn. Stat. § 169A.03, subd. 20 (2008). This key definitional provision provides a detailed and exhaustive list of offenses that qualify as "prior impaired driving conviction[s]," listed by statutory section and year.

   ■ It is undisputed that the statute under which Smith was convicted in 2005, Minn. Stat. § 609.21, subd. 2b(6), is not included in the list, even though the list specifically includes other offenses from section 609.21. *See* Minn. Stat. § 169A.03, subd. 20(2). Under the plain, literal language of the statute, then, Smith's 2005 criminal-vehicular-operation conviction is not a "prior impaired driving conviction." The reason is simple: if a crime is not listed as a "prior impaired driving conviction," it is not a "prior impaired driving conviction."

■ The concurrence does not disagree with this line of reasoning, but nevertheless would conclude that the statute is ambiguous because the State's interpretation—which is that Smith's 2005 criminal-vehicular-operation conviction is a qualifying offense—is also reasonable. The State argues that, because a listed offense, Minn. Stat. § 609.21, subd. 1(6) (2008), includes the same conduct (and nearly identical language) as the statute under which Smith was convicted, Smith's 2005 criminal-vehic-

ular-operation conviction also qualifies as a prior impaired-driving conviction. The State's interpretation is unreasonable, however, because section 609.21, subdivision 2b(6), whatever its similarity to other listed offenses, is not itself listed. We cannot unilaterally create criminal offenses that the Legislature has not. *See State v. Soto*, 378 N.W.2d 625, 630 (Minn. 1985) ("The enactment of criminal laws, the scope of those laws, and the sanctions for their violation, are solely within the legislative function and province."); *State v. Mims*, 26 Minn. 191,2 N.W. 492, 492 (1879) (stating that we must carefully "guard against the creation by judicial construction of criminal offences not within the contemplation of the [L]egislature").[2]

■ The State's interpretation is also incompatible with the interpretive canon *expressio unius est exclusio alterius*, which "means that the expression of one thing is the exclusion of another." *State v. Caldwell*, 803 N.W.2d 373, 383 (Minn. 2011). This canon, which applies to associated groups and series, creates a presumption that an omission in a statute is "by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168, 123 S.Ct. 748, 154 L.Ed.2d 653 (2003); *see Caldwell*, 803 N.W.2d at 383 ("*Expressio unius* generally reflects an inference that any omissions in a statute are intentional."). Such a presumption is particularly strong when, as in this case, a statute is

---

**2.** The dissent, for its part, would cast aside the structure and plain language of Minn. Stat. § 169A.03, subd. 20, to reject our reading, which it says "def[ies] the clear intent of the Legislature." The Legislature has countless ways in which it can draft a criminal statute within broad constitutional parameters, however, and nothing prevents it from enumerating a lengthy and exhaustive list of predicate crimes, as it has done here. Peeking behind the veil to determine what the Legislature *may* have intended, as the dissent does here, is nothing more than judicial legislation,

something we have long rejected. *See State v. Willrich*, 72 Minn. 165, 75 N.W. 123, 124 (1898) ("We must accept the law as we find it, and not attempt any judicial legislation to supply supposed omissions."). The statutory scheme that the Legislature enacted in this case may not have been the one that either we or the dissent would have preferred, but it is what the Legislature passed, and we cannot look past the statute's language to construct what we may consider to be a more sensible statute. *See Mims*, 2 N.W. at 492.

uncommonly detailed and specific. *See, e.g., Christ v. Beneficial Corp.,* 547 F.3d 1292, 1298 (11th Cir. 2008); *Nissan Motor Mfg. Corp., U.S.A. v. United States,* 884 F.2d 1375, 1377 (Fed. Cir. 1989); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 108 (2012) ("The more specific the enumeration, the greater the force of the [*expressio unius*] canon. . . ."). In short, under the *expressio unius* canon, the presence of a detailed and exhaustive list of "prior impaired driving conviction[s]" creates a presumption that the omission of any criminal statutes, such as the criminal-vehicular-operation statute under which Smith was convicted in 2005, was due to deliberate choice, not inadvertence.

Moreover, as Smith notes, had the Legislature wished to include the version of the criminal-vehicular-operation statute in effect in 2005 within the coverage of Minn. Stat. § 169A.03, subd. 20, it could have easily done so in a number of ways. First, it could have referred to all prior criminal-vehicular-operation statutes by section and year, as it already does for other crimes, and listed the specific statute under which Smith was convicted, Minn. Stat. § 609.21, subd. 2b(6), as a qualifying offense. Second, it could have catalogued the qualifying offenses based on the underlying criminal behavior, such as by saying, as applicable here, that "prior impaired driving conviction[s]" includes "any conviction of criminal vehicular oper-

ation resulting in bodily harm," without specifying certain statutory provisions and years.

Finally, the Legislature could have added a broader residual clause to the statute, something it has done in a number of other statutes.[3] *See, e.g.,* Minn. Stat. § 617.247, subd. 9 (2016) (stating that a person convicted of possession of a pornographic work involving minors will be placed on conditional release for 10 years if that person "has previously been convicted of a violation of this section, [a list of other sections], *or any similar statute of the United States, this state, or any state*" (emphasis added)). Notably, Minn. Stat. § 169A.03, subd. 20, contains a residual clause, which provides that the list of qualifying offenses includes "an ordinance from this state, or a statute or ordinance from another state, in conformity with any provision listed in clause (1), (2), (3), or (4)." But the residual clause, which includes *ordinances* of "this state" and statutes and ordinances "from *another state,*" says nothing about similar *statutes* of *this* state that are "in conformity with" the listed offenses. This omission, as well as the fact that the statute lists offenses using the most piecemeal approach possible, further supports the presumption of the *expressio unius* canon that any unlisted offenses, including the version of the criminal-vehicular-operation statute in effect in 2005, are excluded.

**3.** The State and the dissent also urge us to unilaterally adopt the functional equivalent of a residual clause for past versions of the statute by relying on the repeal-and-reenactment statute, Minn. Stat. § 645.37 (2016). Under the repeal-and-reenactment statute, when a law is repealed and its provisions are simultaneously reenacted "in the same or substantially the same terms" by the repealing law, "the earlier law shall be construed as continued in active operation." *Id.* The statute permits "all rights and liabilities incurred" under the earlier law to be "preserved" and "enforced." *Id.* The problem with this argument is clear: an essential component of repeal and reenactment, as the name of the statute suggests, is a repeal of the earlier law. In the case of Minn. Stat. § 169A.03, subd. 20, the statute at issue here, there was no repeal. Rather, the Legislature *amended* section 169A.03, subdivision 20, in 2007. Act of May 7, 2007, ch. 54, art. 3, § 14, 2007 Minn. Laws 206, 251. Accordingly, section 645.37, by its plain terms, does not apply.

The State argues in the alternative that, even if the plain language of the statute unambiguously excludes the statute under which Smith was convicted, we must ignore the statute's plain language because it would lead to absurd results. The court of appeals adopted this argument to uphold Smith's convictions. *Smith*, 2016 WL 1081154, at *2. At bottom, the State asks that we substitute our own judgment for that of the Legislature and judicially amend the statute to list the version of the criminal-vehicular-operation statute in effect in 2005 even though the Legislature did not. We decline to do so.

Only once in our history have we permitted the absurdity canon to override the plain and unambiguous language of a statute. In that case, *Wegener v. Commissioner of Revenue*, we concluded that applying the plain meaning of a property-tax-refund statute would have led "to absurd results or unreasonable results" that "utterly depart[ed] from the purpose of the statute." 505 N.W.2d 612, 617 (Minn. 1993). Even assuming that the rule from *Wegener* applies to unambiguous *criminal* statutes—a question we need not decide today—*Wegener*'s holding is not nearly as broad as the State suggests.

Specifically, lurking behind the *Wegener* rule was a potential violation of the Uniformity Clause of the Minnesota Constitution by allowing the owners of the property in that case "to forever cast upon their neighbors the burden of taxation [that] is rightfully imposed on [their] property." *Id.* at 614 (citing Minn. Const. art. X, § 1). We concluded, based on this observation, that "[w]ere we to adopt [the property owners'] position, we would render a large part of [the statute] inoperative and, incidentally, invalidate it by giving it an unconstitutional effect." *Id.* at 616. Although the State is correct that the absurdity canon is described broadly in *Wegener*, a closer examination reveals that there were two other factors at work: first, giving the statute its plain and unambiguous meaning would have led to the statute being declared unconstitutional, which is a variation on the constitutional-avoidance canon; and second, the plain-meaning interpretation would have violated the whole-statute canon. *See id.* Neither of those considerations is present here.

Although it is odd, perhaps even anomalous, for the Legislature to have included less-serious crimes as prior impaired-driving convictions, but not Smith's 2005 offense, anomalous results, even if they are the product of inadvertence, do not allow us to ignore the plain language of the statute. *See Int'l Bhd. of Elec. Workers, Local No. 292 v. City of St. Cloud*, 765 N.W.2d 64, 68 (Minn. 2009) ("Although the result here ... seems anomalous, that is how the [L]egislature wrote the statute. It is the duty of this court to apply the law as written by the [L]egislature."). Importantly, the State does not argue in this case that the omission of the criminal-vehicular-operation statute from the list of qualifying offenses would create a potential constitutional violation requiring the application of the constitutional-avoidance canon. Nor does the State claim that some other provision of the driving-while-impaired statutes would be undermined or rendered inoperative by the plain-meaning interpretation we adopt today. Indeed, other than claiming that our reading of the statute would produce what is, in its view, an unreasonable result in this case, the State cannot identify anything that approaches absurdity, at least of the kind present in *Wegener*. In short, even assuming the absurdity canon is available in criminal cases, this is not the "exceedingly rare case" in which to apply it. *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 651 (Minn. 2012).

The plain language of Minn. Stat. § 169A.03, subd. 20, definitively answers the legal question presented in this case. Smith's 2005 criminal-vehicular-operation conviction, whatever its similarity to other listed offenses, does not qualify as a prior impaired-driving conviction and therefore the evidence was insufficient to convict Smith of first-degree driving while impaired.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals.

Reversed.

Concurring, Gildea, C.J.

Dissenting, McKeig, Lillehaug, Chutich, JJ.

## CONCURRENCE

GILDEA, Chief Justice (concurring).

I agree with the plurality's conclusion, but I reach this result on different grounds. I would conclude that Minn. Stat. § 169A.03, subd. 20 (2008) ("2010 prior-convictions statute"),[1] is ambiguous because it is susceptible to two reasonable interpretations. I would then consider the canons of statutory construction and the rule of lenity, which lead to the conclusion that appellant Ryan Leroy Smith's 2005 conviction for criminal vehicular operation did not constitute a "prior impaired driving conviction" under the 2010 prior-convictions statute. The evidence was therefore insufficient to support his convictions for first-degree driving while impaired.

### I.

Smith's argument that his 2005 conviction was not a prior impaired driving conviction stems from the Legislature's 2007 reorganization and renumbering of the criminal-vehicular-operation ("CVO") statute. I therefore begin with a discussion of the CVO statute at the time of Smith's 2005 conviction and compare it to the CVO statute in effect at the time of Smith's 2010 DWI offense.

The CVO statute in effect in 2005, Minn. Stat. § 609.21, subd. 2b(6) (2004) ("2005 CVO statute"), provided:

A person is guilty of [CVO] resulting in bodily harm and may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both, if the person causes bodily harm to another, as a result of operating a motor vehicle:

. . . .

(6) in a negligent manner while any amount of a controlled substance listed in schedule I or II, other than marijuana or tetrahydrocannabinols, is present in the person's body[.]

Under the law in 2005, Smith's 2005 conviction was a "prior impaired driving conviction" that could be used to enhance a later DWI conviction. Specifically, in 2005, Minn. Stat. § 169A.03, subd. 20(2) (2004), provided that:

"Prior impaired driving conviction" includes a prior conviction under:

. . . .

(2) section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6); subdivision 2, clauses (2) to (6); subdivision 2a, clauses (2) to (6); *subdivision 2b, clauses (2) to (6)*; subdivi-

---

1. I refer to Minn. Stat. § 169A.03, subd. 20 (2008), as the "2010 prior-convictions statute" because it is the version of the statute in effect when Smith committed the DWI offense at issue here.

sion 3, clauses (2) to (6); or subdivision 4, clauses (2) to (6)[.]

(Emphasis added.)

In 2007, the Legislature reorganized and renumbered the CVO statute. Act of May 7, 2007, ch. 54, art. 3, §§ 7-11, 14-15, 2007 Minn. Laws 206, 248-49, 251 ("2007 Act"). The 2007 Act made four changes relevant to this appeal. First, the Act repealed section 609.21, subdivision 2b, the subdivision under which Smith was convicted in 2005. *Id.* § 15, 2007 Minn. Laws at 251. Second, section 7 of the Act incorporated the language that was in section 609.21, subdivision 2b, into section 609.21, subdivision 1. *Id.* § 7, 2007 Minn. Laws at 248. Third, the 2007 Act amended the CVO law by adding metabolites of schedule I or II controlled substances. *Id.* § 7, 2007 Minn. Laws at 248.[2] Fourth, the 2007 Act instructed the Revisor to amend the definition of "prior impaired driving conviction" in section 169A.03, subdivision 20, to "strike the references to Minnesota Statutes, section 609.21, subdivision 2, clauses (2) to (6); subdivision 2a, clauses (2) to (6); subdivision 2b, clauses (2) to (6); subdivision 3, clauses (2) to (6); and subdivision 4, clauses (2) to (6)." *Id.* § 14, 2007 Minn. Laws at 251.[3]

Following these changes, the statutory citation for the offense Smith was convicted of in 2005 (CVO resulting in injury) changed from subdivision 2b to subdivision 1(6). Specifically, the amended statute, section 609.21, subdivision 1(6) (2008), stated:

A person is guilty of criminal vehicular homicide or operation and may be sentenced as provided in subdivision 1a, if the person causes *injury to or the death of another* as a result of operating a motor vehicle:

. . . .

(6) in a negligent manner while any amount of a controlled substance listed in schedule I or II, *or its metabolite*, other than marijuana or tetrahydrocannabinols, is present in the person's body[.]

(Emphasis added.) In so far as relevant here, the amended language in subdivision 1(6) is essentially identical to what was previously in section 609.21, subdivision 2b(6).

As a further result of the 2007 Act, the DWI statute's definition of "prior impaired driving conviction[s]" in the 2010 prior-convictions statute, section 169A.03, subdivision 20(2), read:

"Prior impaired driving conviction" includes a prior conviction under:

. . . .

(2) section 609.21 (criminal vehicular homicide and injury, substance-related offenses), subdivision 1, clauses (2) to (6)[.]

From this history, it is clear that in 2005, Smith's CVO conviction was a qualifying prior conviction for enhancement purposes. But the question presented here is whether that continued to be the case when Smith was charged with a DWI offense in 2010. In other words, we must determine whether the 2010 prior-convictions statute, Minn. Stat. § 169A.03, subd. 20 (2008), includes Smith's 2005 CVO conviction as a qualified prior offense. That question is one of statutory interpretation that we review de novo. *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011). Our goal in interpreting statutes is to determine and effectuate the Legislature's in-

---

**2.** The 2007 Act noted that these three changes are "effective August 1, 2007, and appl[y] to crimes committed on or after that date." *Id.* § 7, 2007 Minn. Laws at 248.

**3.** This change was "effective August 1, 2007." *Id.*

tent. Minn. Stat. § 645.16 (2016). When the Legislature's intent is clear from unambiguous statutory language, we look only to the statute's plain meaning. *Leathers*, 799 N.W.2d at 608. But if a statute is open to more than one reasonable interpretation, the statute is ambiguous and we look to the canons of statutory construction to determine its meaning. *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). With these principles in mind, I turn to the question of whether the 2010 prior-convictions statute, Minn. Stat. § 169A.03, subd. 20, is ambiguous.

## II.

A statute is ambiguous when its language is subject to more than one reasonable interpretation. *Rick*, 835 N.W.2d at 482. Smith argues that the 2010 prior-convictions statute plainly did not include his 2005 CVO conviction. Smith focuses on the fact that the specific subdivision under which he was convicted in 2005—subdivision 2b(6) of the 2005 CVO statute—is not one of the enumerated "prior impaired driving conviction[s]" in the 2010 prior-convictions statute. *See* Minn. Stat. § 169A.03, subd. 20 (2008). The State disagrees, arguing that the conduct for which Smith was convicted in 2005 continues to be encompassed in the 2010 prior-convictions statute. The plurality interprets the 2010 prior-convictions statute the way Smith does and the dissent adopts the interpretation of the State. In my view, both interpretations are reasonable.

Smith reasonably interprets the prior-convictions statute. The fact that the statutory section under which Smith was convicted in 2005, section 609.21, subdivision 2b(6), is not listed as a "prior impaired driving conviction" in the 2010 prior-convictions statute supports Smith's interpretation of the 2010 prior-convictions statute. The 2010 prior-convictions statute states

that CVO convictions "under" subdivision 1 of the CVO statute constitute prior impaired-driving convictions. *See* Minn. Stat. § 169A.03, subd. 20(2) (2008). A person could reasonably interpret that language to mean that CVO convictions arising "under" non-enumerated statutes, such as Smith's 2005 conviction under what used to be subdivision 2b of the CVO statute, could not be used. Similarly, because the 2010 prior-convictions statute lists specific subdivisions as falling within the statute's scope, it can reasonably be argued that other subdivisions not listed are necessarily excluded. *See* Minn. Stat. § 169A.03, subd. 20 (2008); *State v. Williams*, 771 N.W.2d 514, 523 (Minn. 2009) (discussing the canon of *expressio unius est exclusio alterius*, meaning " 'the expression of one thing is the exclusion of another' " (quoting *Nelson v. Productive Alternatives, Inc.*, 715 N.W.2d 452, 457 (Minn. 2006))). And as Smith and the plurality note, had the Legislature intended to include prior CVOs like his within the scope of the 2010 prior-convictions statute, it could have done so more clearly.

For all of these reasons, I conclude that Smith presents a reasonable interpretation of the 2010 prior-convictions statute. But Smith's interpretation is not the only reasonable interpretation of the statute. The interpretation the State offers is also reasonable.

The State's interpretation focuses on the criminal behavior Smith was convicted of in 2005—criminal vehicular operation that resulted in injury. Specifically, the State argues that while the *number* of the subdivision under which Smith was convicted is not listed in the 2010 prior-convictions statute, the crime he was convicted of in 2005 (CVO resulting in bodily injury) is still included in the 2010 prior-convictions

statute, just with a different statutory citation.[4]

This interpretation is reasonable because the 2010 prior-convictions statute includes the criminal behavior Smith was convicted of in 2005 as a prior qualifying conviction. In other words, the same conduct underlying Smith's 2005 CVO conviction—"caus[ing] bodily harm to another, as a result of operating a motor vehicle . . . in a negligent manner while any amount of a controlled substance . . . is present in the person's body," Minn. Stat. § 609.21, subd. 2b(6) (2004)—is included, in almost the same language, in the 2010 prior-convictions statute. *See* Minn. Stat. § 609.21, subd. 1(6) (2008). This interpretation, which reads the 2010 prior-convictions statute together with the CVO statute, is reasonable. *See State v. Bakken*, 883 N.W.2d 264, 268 (Minn. 2016) (requiring reading a statute as a whole when determining whether it is ambiguous).

Smith contends that the State's interpretation is not reasonable because the removal of the specific numerical statutory citation means that defendants in his position would not have adequate notice that their prior offenses fall within the scope of the 2010 prior-convictions statute. I disagree. An individual reading the 2010 prior-convictions statute would see that convictions under "section 609.21 . . . subdivision 1, clauses (2) to (6)" are included. Minn. Stat. § 169A.03, subd. 20 (2008). And the crime Smith was convicted of in 2005—criminal vehicular operation resulting in injury—is a conviction under section 609.21, subdivision 1(6) (2008). Under this reading, there is notice that the crime falls within the scope of the 2010 prior-

convictions statute. *See* Minn. Stat. §§ 169A.03, subd. 20(2); 609.21, subd. 1(6) (2008). And the descriptive language that the 2010 prior-convictions statute uses in conjunction with the statutory citations, "section 609.21 *(criminal vehicular homicide and injury, substance-related offenses)*, subdivision 1," reinforces the conclusion that the statute, as the State reads it, provides adequate notice. Minn. Stat. § 169A.03, subd. 20(2) (2008) (emphasis added).

Ultimately, the State, focusing on the criminal behavior Smith committed in 2005—not simply the numerical citation of that crime—also provides a reasonable interpretation of the 2010 prior-convictions statute. Because both the State and Smith offer reasonable interpretations of the 2010 prior-convictions statute, Minn. Stat. § 169A.03, subd. 20 (2008), I conclude that the statute is ambiguous.

### III.

When a statute is ambiguous, we look to the canons of statutory construction to determine the statute's meaning. *Leathers*, 799 N.W.2d at 611. In Minnesota Statutes § 645.16(1)-(7), the Legislature has instructed that its intent with regard to an ambiguous statute may be ascertained by considering, among other things, (1) the occasion and necessity for the law, (2) the circumstances under which it was enacted, (3) the mischief to be remedied, (4) the object to be obtained, (5) the former law, (6) the consequences of a particular interpretation, and (7) contemporaneous legislative history. Smith stated at oral argument that if the statute is ambiguous, that ambiguity should be resolved in his favor using

---

4. I agree with the plurality's conclusion that the repeal-and-reenactment statute, Minn. Stat. § 645.37 (2016), is not applicable here. The dissent contends, however, that section 645.37 is applicable because part of the 2005

CVO statute was repealed and we must construe the 2010 prior-convictions statute with the 2005 CVO statute. The language of section 645.37 does not leave room for the dissent's bootstrapping analysis.

the rule of lenity. The State, on the other hand, argues that the legislative history favors its interpretation.

I conclude that the contemporaneous legislative history in this case, which addresses factors (1) through (4) and (7) in Minn. Stat. § 645.16, does not resolve the ambiguity. As described above, the Legislature reorganized and amended the CVO and DWI laws in 2007. 2007 Act, Ch. 54, art. 3, 2007 Minn. Laws at 245. But these changes, in themselves, do not indicate whether the Legislature intended to include prior CVO convictions adjudicated under subdivision 2b(6) of the 2005 CVO statute, as prior impaired-driving convictions in the 2010 prior-convictions statute. The changes could support either of the parties' two reasonable arguments: as Smith argues, the statutory citation to subdivision 2b(6) was removed in the 2010 prior-convictions statute; but, as the State argues, the criminal behavior of Smith's 2005 CVO conviction was incorporated into subdivision 1 of the amended CVO statute.

The effective dates included in the 2007 Act also do not resolve the question. Because the amended CVO statute states that the new subdivision 1 "applies to crimes committed on or after [August 1, 2007]," the statute may only apply prospectively. Ch. 54, art. 3, § 7, 2007 Minn. Laws at 248. One could argue that because Smith's 2005 CVO was committed before the effective date, his crime cannot be encompassed in subdivision 1 of the new CVO statute. On the other hand, the prospective effective date may mean that only the substantive changes made to subdivision 1 of the CVO statute, such as the addition of metabolites, apply to crimes committed after the amendments went into effect.

Other sources of contemporaneous legislative history are similarly unhelpful. The Senate Judiciary Committee held a hearing on the 2007 Act and discussed the provision in the Act repealing subdivisions 2, 2a, 2b, 3, and 4 of the 2005 CVO statute. Hearing on S.F. 302, S. Judiciary Comm., 85th Minn. Leg., Feb. 8, 2007 (comments of Professor Steve Simon).[5] Professor Steve Simon, who led the Minnesota Criminal Justice System DWI Task Force that authored the bill, testified before the Committee. He explained that the change was meant to streamline the "poorly drafted" CVO statute, "making no policy changes, but making it much easier to work with." *Id.* In addition, the 2007 Act's House Research Bill Summary notes that the Act "restructures the criminal vehicular operation law making both technical and substantive changes." H. Res. Bill Summary, H.F. 829, art. 3 (May 2, 2007). As to the change to the prior-convictions statute, the report explains that the amendments were meant to make the statutory references consistent with the restructuring of the CVO law. *Id.* § 14.

Professor Simon's statements do not resolve the ambiguity presented here for two reasons. First, we have previously noted that statements by non-sponsoring legislators must be "treated with caution." *Handle With Care, Inc. v. Dep't of Human Servs.*, 406 N.W.2d 518, 522 (Minn. 1987). This is because the statement of one person does not necessarily reflect the Legislature's intent, which arises from the collective understandings of the individual legislators. *Id.* Here, Professor Simon's remarks constitute statements by a non-legislator, which are usually given no weight absent evidence that the statements reflect

5. Senate File 302 was later incorporated into a House omnibus bill, H.F. 829, which was

enacted as the 2007 Act.

the legislators' views. *See Kelly v. Robinson*, 479 U.S. 36, 51 n.13, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) (according no significance to a non-legislator's testimony); *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 872 P.2d 668, 674 (1994) ("[T]he best policy is not to consider nonlegislators' statements to determine the [L]egislature's intent concerning the specific application of a proposed statute, unless the circumstances provide sufficient guarantees that the statements reflect legislators' views."). There is no such evidence that legislators had the same understanding as Professor Simon here. Second, the statement does not resolve the question before us because it only addresses the CVO statute and does not discuss the changes made in 2007 to the prior-convictions statute. This hearing therefore provides no indication about whether or not the Legislature intended that CVO convictions under the repealed subdivisions would continue to qualify as

"prior impaired driving conviction[s]" under the 2010 prior-convictions statute.

Similarly, the House Research Bill Summary constitutes a statement by nonlegislators to which we typically accord no weight. *See Kelly*, 479 U.S. at 51 n.13, 107 S.Ct. 353. The House Research Department wrote the report to summarize the bill for legislators and, as such, the report is not part of the legislative history of the bill. Further, the statements in the report do not resolve the question before us. The report notes only that the 2007 Act tries to make the 2010 prior-convictions statute "consistent" with the substantive and technical changes made to the CVO law. But the research summary does not discuss whether prior CVO offenses, like Smith's 2005 offense, were meant to be "prior impaired driving conviction[s]" under the 2010 prior-convictions statute.[6] For all of these reasons, the legislative history does not resolve the ambiguity.

6. In addition to contemporaneous legislative history, the parties also discuss legislative history from 2012. In 2012, the Legislature amended the 2010 prior-convictions statute to add a reference to the repealed CVO subdivisions, like subdivision 2b. Act of Apr. 23, 2012, ch. 222, § 1, 2012 Minn. Laws 685, 685 ("2012 Act"). The 2012 Act stated that "[i]t was not the legislature's intent in 2007 to make a substantive change regarding [which prior CVO convictions] would qualify as prior impaired driving convictions ... or be considered as a predicate for the first-degree driving while impaired crime." *Id.* § 4, 2012 Minn. Laws at 687. This history might initially seem to support the State's interpretation.

But the 2012 legislative history is inconclusive. The fact that the 2012 Act amended the 2010 prior-convictions statute to add a historical reference to the repealed subdivisions of the 2005 CVO statute, including subdivision 2b, suggests that the 2012 Legislature did not believe that those offenses were included in the 2010 prior-convictions statute. If Smith's 2005 CVO conviction was clearly covered in the 2010 prior-convictions statute, there would ·be no need for the Legislature to amend the statute in 2012. In my view, the

2012 Act reinforces, rather than resolves, the ambiguity.

More fundamentally, however, the 2012 Legislature's interpretation of the 2007 law is not controlling. *See Anderson v. Firle*, 174 Minn. 333, 219 N.W. 284, 285 (1928) ("We recognize the rule that one Legislature is not the interpreter of the laws enacted by a prior Legislature."). *But see A & H Vending Co. v. Comm'r of Revenue*, 608 N.W.2d 544, 550 (Minn. 2000) (noting, however, that we are not precluded from reaching an interpretation consistent with a later Legislature's interpretation). If we were bound by a later Legislature's interpretation, we would be abdicating our power to interpret the law. *See Honeywell, Inc. v. Minn. Life & Health Ins. Guar. Ass'n*, 518 N.W.2d 557, 562 (Minn. 1994). Notably, we have used a subsequent expression of intent by a Legislature to interpret ambiguous statutory language in the auto-insurance context, *see Holman v. All Nation Ins. Co.*, 288 N.W.2d 244, 250-51 (Minn. 1980). But I would hesitate to do so here, in the criminal context, where we are uniquely concerned about due process and definiteness, and the legislative history is more inconclusive than was the case in *Holman*.

Next, looking to the former law, as Minn. Stat. § 645.16(5) advises, is also unhelpful in resolving the ambiguity. While the pre-2007 version of the DWI prior-convictions statute included CVO convictions under subdivision 2b(6) of the CVO statute, *see* Minn. Stat. § 169A.03, subd. 20(2) (2004), that does not resolve the question of how to interpret the 2010 prior-convictions statute after those particular CVO convictions were removed.

Similarly, the consequences of each particular interpretation, *see* Minn. Stat. § 645.16(6), do not favor either interpretation. Under Minn. Stat. § 645.17(1) (2016), we presume when interpreting ambiguous statutes that "the [L]egislature does not intend a result that is absurd, impossible of execution, or unreasonable." The State argues that adopting Smith's interpretation would lead to absurd results. In particular, the State notes that while Smith's 2005 CVO conviction would not be counted as a prior impaired-driving conviction, impaired-driving incidents from the same time period that did not result in injury would be included. DWIs where there is no injury are adjudicated under section 169A.20 and were listed as prior impaired-driving convictions both before, Minn. Stat. § 169A.03, subd. 20(1) (2004), and after the 2007 Act's reorganization, Minn. Stat. § 169A.03, subd. 20(1) (2008).

But this is not the type of result we have found to be "absurd" or "unreasonable" in the past. *See State v. Bluhm*, 676 N.W.2d 649, 654 (Minn. 2004) (holding that the defendant's reading of the statute was "absurd" because it required the statute's plain language to be ignored and was contrary to law). Further, where the Legislature has not expressed an intent that all classes of an offense are to be covered by a statute, but instead includes some and excludes others, the choice of what to exclude is unlikely to be "absurd" because

the Legislature is exercising its policymaking discretion. *Cf. Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Trust*, 659 N.W.2d 755, 761-62 (Minn. 2003) (concluding that the Minnesota No-Fault Insurance Act's failure to include some victims of automobile accidents was not "absurd" where the Act already chose classes of victims to include and excluded others). Here, the Legislature did not include section 169A.35 (2016) (criminalizing drinking or consuming alcohol in a motor vehicle when that vehicle is on a street or highway), or section 192A.555 (2016) (stating, under the Minnesota Code of Military Justice, that a person who operates a motor vehicle while under the influence of alcohol or a controlled substance shall be punished), as prior qualifying convictions. The 2010 prior-convictions statute, therefore, does not express an intent that *all* impaired-driving offenses qualify as prior impaired-driving convictions for enhancement purposes. In the absence of an expression of legislative intent to include all prior DWI convictions as qualifying convictions, I cannot conclude that listing or not listing Smith's 2005 CVO conviction would be "absurd" or "unreasonable."

In sum, the canons of statutory construction in Minn. Stat. § 645.16 do not resolve the ambiguity. Accordingly, I turn to the rule of lenity. *Leathers*, 799 N.W.2d at 611. Lenity requires us to resolve ambiguity in a criminal statute in favor of the criminal defendant by adopting the more narrow interpretation. *State v. Nelson*, 842 N.W.2d 433, 444 (Minn. 2014). The principle behind the rule of lenity is that "no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed." *United States v. Santos*, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008).

Applying the rule of lenity, I would adopt Smith's interpretation of the 2010 prior-convictions statute, which is the more narrow interpretation of the statute and favors defendants prosecuted under that statute. I conclude that prior convictions under the 2005 CVO statute, Minn. Stat. § 609.21, subd. 2b(6) (2004), do not qualify as "prior impaired driving conviction[s]" under the 2010 prior-convictions statute, Minn. Stat. § 169A.03, subd. 20(2) (2008). As a result, because Smith's 2005 CVO conviction could not be used to enhance his present DWI offense, the evidence was insufficient to convict him of first-degree DWI.

## DISSENT

MCKEIG, Justice (dissenting).

In 2010, after driving under the influence of alcohol, over the speed limit, and without a license, Ryan Leroy Smith was charged with his fourth impaired-driving offense in 10 years. Based on Smith's three prior offenses, including a 2005 conviction for criminal vehicular operation (CVO) resulting in bodily harm, the district court enhanced Smith's DWI conviction to a first-degree offense. Minn. Stat. § 169A.24, subd. 1(1) (2016). The court of appeals affirmed. *State v. Smith*, No. A15-0570, 2016 WL 1081154 (Minn.App. Mar. 21, 2016). Today, the plurality and concurrence reverse Smith's conviction based solely on the Legislature's renumbering of Smith's 2005 offense. Because their interpretations defy the clear intent of the Legislature, I respectfully dissent.

## I.

Smith's 2010 DWI could be enhanced to a first-degree offense if Smith incurred three "qualified prior impaired driving incidents" within 10 years of the offense. *See* Minn. Stat. § 169A.24, subd. 1(1). "Qualified prior impaired driving incident[s]" in-

clude "prior impaired driving convictions," Minn. Stat. § 169A.03, subd. 22 (2016), which in turn include convictions under various statutes relating to driving under the influence of alcohol or other controlled substances, Minn. Stat. § 169A.03, subd. 20 (2008).

In addition to two unchallenged qualifying incidents, Smith was convicted in 2005 of gross-misdemeanor CVO resulting in bodily harm under Minn. Stat. § 609.21, subd. 2b(6) (2004) (defining CVO resulting in bodily harm as "caus[ing] bodily harm to another, as a result of operating a motor vehicle . . . . in a negligent manner while" under the influence of "any amount of a [listed] controlled substance"). At the time of Smith's 2005 conviction, subdivision 2b(6) was included among the prior impaired-driving convictions that could be used to enhance a future DWI offense. Minn. Stat. § 169A.03, subd. 20(2) (2004).

In 2007, as part of a consolidation of the CVO provisions, subdivision 2b(6) was simultaneously repealed and reenacted within subdivision 1(6) of the same section. Act of May 7, 2007, ch. 54, art. 3, §§ 7-11, 2007 Minn. Laws 206, 248-49 ("2007 Act"); *see also* Minn. Stat. § 609.21, subd. 1(6) (2008) (defining CVO as "caus[ing] injury to . . . another as a result of operating a motor vehicle . . . . in a negligent manner while" under the influence of "any amount of a [listed] controlled substance"). Accordingly, the list of prior impaired-driving convictions was amended to reference subdivision 1(6) instead of subdivision 2b(6). *See* Minn. Stat. § 169A.03, subd. 20(2) (2008).

In 2011, an appellant raised a challenge similar to Smith's based on the 2007 Act, arguing that his prior conviction could not be used to enhance his most recent DWI offense because the subdivision number of his prior offense had been changed. *State v. Retzlaff*, 807 N.W.2d 437, 438-39 (Minn.

App. 2011). We affirmed the conviction by an evenly divided court without opinion. *State v. Retzlaff*, 842 N.W.2d 565 (Minn. 2012). Following *Retzlaff*, the Legislature amended the prior-convictions statute to make clear that it continued to encompass the consolidated former subdivisions of section 609.21, including subdivision 2b(6). Act of Apr. 23, 2012, ch. 222, § 1, 2012 Minn. Laws 685, 685; *see also id.* § 4, 2012 Minn. Laws at 687 (stating that the 2007 Act was not intended to substantively change the prior-convictions statute).

## II.

When interpreting statutes, we aim to determine and give effect to the Legislature's intent. Minn. Stat. § 645.16 (2016). When such intent is clear from the unambiguous language of the statute, we do not look beyond the statute's plain meaning. *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011). In determining whether a statute is ambiguous, we "interpret the statute as a whole." *State v. Bakken*, 883 N.W.2d 264, 268 (Minn. 2016). If a statute's language is subject to more than one reasonable interpretation, the statute is considered ambiguous. *State v. Rick*, 835 N.W.2d 478, 485 (Minn. 2013).

It is undisputed that, in relevant part, section 609.21, subdivision 1(6) is essentially identical to the repealed subdivision under which Smith was convicted, subdivision 2b(6). Yet, the plurality concludes that simply because Smith's 2005 offense was listed under a different subdivision number at the time of his most recent conviction, the district court could not use it to enhance Smith's fourth impaired-driving offense in 10 years to a first-degree offense. This interpretation fails to adequately consider the Legislature's intent.

The plain language of the statutes at issue makes clear the Legislature's intent that Smith's 2005 CVO conviction may be used to enhance his 2010 DWI offense. I agree with the State that a reasonable person would not only look at the subdivision in which a qualifying offense is found, but would also examine the language of the qualifying offense itself. This is the only interpretation that reads the relevant statutes as a whole, and is therefore the only reasonable interpretation. *See Bakken*, 883 N.W.2d at 268.

The plurality and concurrence deem reasonable Smith's argument that a person would rely on the number, and not the language, of an offense. But a crime is not defined by the number of the statutory subdivision in which it is codified; rather, a crime is defined by the language used to describe it. *See In re Haskvitz*, 104 F.Supp. 173, 182-83 (D. Minn. 1952) (holding that the "mere substitution" of three listed section numbers for the phrase "This Act" in a statute "evinces no intent to change the meaning of" the statute). A reasonable person would not stop at the citation to the CVO offense in the DWI prior-convictions statute, Minn. Stat. § 169A.03, subd. 20(2) (2008). The person would proceed to the offense itself, Minn. Stat. § 609.21, subd. 1(6), and find nearly the same language as Smith's prior conviction, describing the conduct of causing injury to another person while operating a vehicle under the influence of alcohol. Therefore, Smith's extremely narrow interpretation of the statutes is unreasonable.

Essentially, the plurality and concurrence conclude that when the Legislature repealed and reenacted the statute under which Smith was convicted, it created a technical loophole through which Smith can escape the enhancement of his current offense. But the Legislature has closed such loopholes that may arise inadvertently when it repeals and reenacts statutes. *See* Minn. Stat. § 645.37 (2016). Section

645.37 applies "[w]hen a law is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing law." Under these circumstances, "the earlier law shall be construed as continued in active operation" and "[a]ll rights and liabilities incurred under such earlier law are preserved and may be enforced." *Id.* In other words, "[a] re-enacted statute should receive the known, settled construction which it had received when previously in force." *Wenger v. Wenger*, 200 Minn. 436, 274 N.W. 517, 519 (1937).

Here, the 2007 Act simultaneously repealed and reenacted section 609.21, subdivision 2b(6), incorporating it into subdivision 1(6) in "substantially the same terms." *See* Minn. Stat. § 645.37. As a result, Smith's potential liability under subdivision 2b(6)—that his CVO offense could be used to enhance a later DWI offense—was preserved and enforceable upon Smith's 2010 DWI offense. The plain language of section 645.37 therefore tells us that the Legislature, in reorganizing the CVO statutes, did not intend to exclude convictions under subdivision 2b(6) from the prior-convictions statute going forward.[1]

Smith argues that upholding his conviction would violate his due process rights by subjecting him to criminal penalties under a vague or ambiguous statute. Criminal statutes must provide adequate notice of the conduct that will result in criminal penalties. *See State v. Ibarra*, 355 N.W.2d 125, 128 (Minn. 1984) (stating that due process requires that criminal statutes "not be so vague that persons of common intelligence must guess at their meanings"). But here, no vagueness or ambiguity was created by transferring the statutory language of one subdivision to another.

The only reasonable conclusion is that the Legislature did not intend to create the loophole that the plurality and concurrence recognize today. Therefore, I would affirm the court of appeals and hold that the plain language of the relevant statutes supports the district court's decision to use Smith's 2005 CVO conviction to enhance his most recent DWI offense.

LILLEHAUG, Justice (dissenting).

I join in the dissent of Justice McKeig.

CHUTICH, Justice (dissenting).

I join in the dissent of Justice McKeig.

---

1. The plurality and concurrence contend that section 645.37 does not apply in this case because the prior-convictions statute in effect when Smith was convicted in 2005, section 169A.03, subdivision 20 (2004), was not repealed but was merely amended. We cannot reasonably interpret the prior-convictions provision in isolation. The amendment to the prior-convictions statute at issue here—specifically, replacing the subdivision number for CVO resulting in bodily harm—was a simple edit made to reflect the Legislature's consolidation of the offenses in the CVO statute, section 609.21. The CVO statute is therefore directly relevant to the prior-convictions statute for the purposes of this case. Because the 2007 Act repealed and replaced the offense under which Smith was convicted within the CVO statute, section 645.37 is applicable here.