STATE OF MINNESOTA

IN SUPREME COURT

A24-1837

Anoka County                                                                                    McKeig, J.

State of Minnesota,

            Respondent,

vs.                                                                                    Filed:  March 25, 2026
                                                                                       Office of Appellate Courts

Melissa Madelyne Zielinski,

            Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Brad Johnson, Anoka County Attorney, Kelsey R. Kelly, Assistant County Attorney, Anoka, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.     A district court may summarily deny a preliminary application for relief under the Act of May 19, 2023, ch. 52, art. 4, § 24, 2023 Minn. Laws 810, 864–68 (the Act) only for the reasons enumerated in subdivision 5(e)–(f) of the Act.

2.     Applicants convicted of first-degree felony murder meet the "reasonable probability" standard in the Act if they allege facts in their preliminary application that

1

would cause a rational person to believe that at an evidentiary hearing, they might be able to prove by a preponderance of the evidence that they neither caused nor intentionally aided, advised, hired, counseled, or conspired with or otherwise procured another with the intent to cause the death of a human being.

3.      In considering a request for relief under the Act, a district court cannot make credibility determinations without first holding an evidentiary hearing as provided for by subdivision 6 of the Act.

Reversed and remanded.

O P I N I O N

McKEIG, Justice.

The issue in this appeal is whether the district court abused its discretion by summarily denying appellant Melissa Madelyne Zielinski's preliminary application for relief under legislation enacted during the 2023 session providing a path to possible relief for individuals convicted of intentional felony murder under an aiding-and-abetting theory of liability.  Act of May 19, 2023, ch. 52, art. 4, § 24, 2023 Minn. Laws 810, 864–68 (the Act).  We conclude that under the plain language of the Act, a district court may summarily deny a preliminary application only for the reasons enumerated in subdivision 5(e)–(f) of the Act.  Because we conclude that the district court abused its discretion by issuing a summary denial for a reason outside of those enumerated in subdivision 5(e)–(f), and that a reversal and remand is required, we also clarify two additional issues to provide guidance to the district court and counsel on remand.  Specifically, we clarify that in order to establish that "there is a reasonable probability that the applicant is entitled to relief,"

applicants convicted of first-degree felony murder must allege facts in their preliminary application that would cause a rational person to believe that, at an evidentiary hearing, the applicants might be able to prove by a preponderance of the evidence that they neither caused nor intentionally aided, advised, hired, counseled, or conspired with or otherwise procured another with the intent to cause the death of a human being. We also clarify that in considering a request for relief under the Act, a district court cannot make credibility determinations without first holding an evidentiary hearing, as provided for in subdivision 6 of the Act. For the reasons articulated below, we reverse the district court's summary denial of Zielinski's preliminary application and remand to the district court for further proceedings consistent with this opinion.

## FACTS

In November 2021, an Anoka County grand jury indicted Zielinski for first-degree felony murder, specifically "aiding and abetting murder in the first degree (Intentional/Aggravated Robbery),"[1] for the shooting death of Karl Henderson. At that time, the State did not need to prove that Zielinski intended to cause the death of another for the jury to find Zielinski guilty of first-degree felony murder under an aiding-and-abetting theory of liability. *See* Minn. Stat. §§ 609.185(a)(3), 609.05, subds. 1–2 (2022). Instead, under the law in existence at the time, the State needed to prove that Zielinski's

---

[1]     Aiding and abetting is not a substantive offense. *State v. Ezeka*, 946 N.W.2d 393, 400 n.1 (Minn. 2020). Instead, it is a theory of criminal liability. *Id.* Consequently, the phrase "aiding and abetting murder in the first degree (intentional/aggravated robbery)" is imprecise. However, this imprecision has no legal effect here.

accomplice—her brother, Nicholas Zielinski[2]—intended to cause the death of another while committing aggravated robbery, that Zielinski was intentionally aiding her brother in committing the aggravated robbery, and that it was reasonably foreseeable that a person would die as a probable consequence of committing the crime of aggravated robbery. *See* Minn. Stat. §§ 609.185(a)(3), 609.05, subds. 1–2 (2022).

### Evidence at Trial

We laid out the State's theory of the case and evidence presented at trial in *State v. Zielinski* (*Zielinski I*), 10 N.W.3d 1, 7–13 (Minn. 2024), and we now highlight relevant aspects of the theory and evidence as follows. Zielinski needed money to close on a real estate transaction so she and her son could continue living in their home. The day before Henderson's death, Zielinski's son texted her, "So you and Nick are going to go muscle some money," to which Zielinski replied, "Hopefully. I waited long enough." The next day, Zielinski and her brother went to Henderson's home because Henderson was an alleged drug dealer who always kept at least $50,000 in a safe in his home. Her brother testified at trial that it was Zielinski's idea to go to Henderson's house and that she told him "[t]o bring the gun with."

According to her brother's trial testimony, he and Zielinski entered Henderson's home, went downstairs, and found Henderson. Her brother "pulled the gun on him and told him to lay on the ground." Zielinski zip-tied Henderson's wrists and "asked him for the combination to the safe." Her brother picked Henderson up so he could see the safe, at

---

[2] All references in this opinion to "Zielinski," standing alone, refer to appellant Melissa Madelyne Zielinski.

which point the zip-ties broke and Henderson grabbed the gun. Her brother and Henderson "wrestl[ed] over the gun and [her brother] pulled the trigger twice and one of the bullets hit [Henderson]." According to her brother, Zielinski did not participate in the struggle over the gun. Her brother testified that he did not enter the room with intent to kill Henderson, but that he intended to kill Henderson when he pulled the trigger because he "felt like it was life or death at that moment." Her brother testified that after the shots, Zielinski did not scream or cry and instead told her brother to "[g]rab the safe." Her brother grabbed the safe.

Henderson's father testified at trial that he entered the house as "a male and a female walk[ed] up, out of the basement, towards the front door" of the home. Henderson's father observed that the male was carrying a "heavy object," asked them, "Hey, who are you? What are you doing? What do you got?" and told them "Hey, stop." The male responded, "Your son stole on me and you need to back off or I'm going to take you out, too." Henderson's father went back into the house, found Henderson "laying on the floor and in a pool of blood," and called 911. Paramedics arrived, attempted to save Henderson's life, and told Henderson's father that Henderson was dead.

Because it was not required under then-existing law for first-degree felony murder under an aiding-and-abetting theory of liability, the State never argued during the 18-day jury trial that Zielinski intended to cause Henderson's death. Likewise, Zielinski did not argue that she lacked intent to cause Henderson's death. The district court instructed the jury on the elements of first-degree felony murder under an aiding-and-abetting theory of liability, none of which required the State to prove Zielinski intended to cause Henderson's

death. Those elements were: (1) Henderson died; (2) Zielinski's brother caused Henderson's death; (3) her brother "acted with the intent to kill Karl Henderson"; and (4) Zielinski or her brother were, at the time that her brother caused Henderson's death, "committing the crime of aggravated robbery." The parties' arguments and the court's jury instructions reflected the felony murder and aiding-and-abetting statutes at the time. *See* Minn. Stat. §§ 609.185(a)(3), 609.05, subds. 1–2 (2022).

The jury found Zielinski guilty of "aiding and abetting first degree murder, with intent, while committing the crime of aggravated robbery, in violation of Minn. Stat. § 609.185(a)(3)."[3] The district court convicted Zielinski of this offense and sentenced her to life in prison with the possibility of release.[4]

***Postconviction Appeal***

In May 2022, Zielinski filed a direct appeal, which we stayed to allow her to pursue postconviction relief in the district court. *See Zielinski I*, 10 N.W.3d at 7. In her postconviction petition, she brought ineffective-assistance-of-counsel claims. *Id.* at 12. The district court denied the petition. *Id.* Zielinski appealed the denial of her postconviction petition, and we consolidated her direct and postconviction appeals. *Id.* In

---

[3] The jury also found Zielinski guilty of "aiding and abetting second degree murder, with intent, in violation of Minn. Stat. § 609.19, subd. 1(1)," and "aiding and abetting second degree murder, without intent, while committing the crime of aggravated robbery, in violation of Minn. Stat. § 609.19, subd. 2(1)."

[4] The court also convicted Zielinski of intentional second-degree murder, but we vacated that conviction under Minnesota Statutes section 609.04, subd. 1, in *Zielinski I* because "second-degree murder is an included offense of first-degree murder." 10 N.W.3d at 7, 16–17.

July 2024, we affirmed Zielinski's first-degree felony murder conviction, which she had challenged on constitutional and other grounds. *Id.* at 7. At no point did we draw any conclusions regarding Zielinski's intent, or lack thereof, to cause Henderson's death.

### *Passage of the Act*

Zielinski's trial took place before the Legislature amended the state's felony murder laws. Until 2023, Minnesota's expansive liability statute allowed a defendant to be found guilty of first-degree felony murder in Minnesota under an aiding-and-abetting theory of liability without intent to cause the death of another person. Minn. Stat. §§ 609.185(a)(3), 609.05 (2022). In 2021, the Legislature established the Task Force on Aiding and Abetting Felony Murder "to understand any benefits and unintended consequences of Minnesota's aiding and abetting felony murder doctrine." Task Force on Aiding and Abetting Felony Murder, Report to the Minnesota Legislature, 1 (Feb. 1, 2022). The Task Force found that "people 25 years and younger, people in Hennepin County, Black people, and people with little to no criminal history are those most frequently impacted by aiding and abetting felony murder liability" across Minnesota from 2010 to 2019, and expressed concern regarding the "geographic, race, and age disparities that have happened under this doctrine." *Id.* at 2. Accordingly, the Task Force recommended revising Minnesota Statutes to "limit aiding and abetting felony murder liability" and to enable "those previously convicted" under those statutes to "petition for limited relief." *Id.* at 3.

The Legislature enacted both recommendations in 2023. Act of May 19, 2023, ch. 52, art. 4, §§ 3, 24, 2023 Minn. Laws 810, 850–51, 864–68. Section 3 of the Act created an exception to the expansive liability rule for intentional felony murder convictions such

7

that a person can be convicted of first-degree felony murder "for a death caused by another" only if "the person intentionally aided, advised, hired, counseled, or conspired with or otherwise procured the other with the intent to cause the death of a human being." *Id.*, ch. 52, art. 4, § 3, 2023 Minn. Laws 810, 850 (codified at Minn. Stat. § 609.05, subd. 2a(a)).

Section 24 created a path for individuals convicted of first-degree intentional felony murder, Minn. Stat. § 609.185(a)(3), or second-degree intentional felony murder, Minn. Stat. § 609.19, subd. 2(1), under an aiding-and-abetting theory of liability to apply for limited relief. *See* the Act, subd. 3(a)(1)–(2). In the first step, the applicant must submit a preliminary application to the district court seeking permission to petition to vacate the felony murder conviction.[5] *Id.*, subd. 4(a); *In re The Filing of Requests for Relief in Aid and Abet Felony Murder Cases*, No. ADM09-8010, Order at 2–3 (Minn. filed Aug. 18, 2023). This preliminary application must contain certain identifying and procedural information about the applicant and the applicant's case and "a brief statement . . . explaining why the applicant is entitled to relief under this section." The Act, subd. 4(a).

The district court judge reviewing the preliminary application "shall determine whether, in the discretion of that judge, there is a reasonable probability that the application is entitled to relief." *Id.*, subd. 5(c). To make its determination of reasonable probability, the judge "shall consider the preliminary application and any materials submitted with the preliminary application and may consider relevant records in the possession of the judicial

---

[5] Subdivision 4(d) of the Act required that "[a]ny person seeking relief under this section must submit a preliminary application no later than October 1, 2025." The Act has since been amended to extend the time to submit a preliminary application to October 1, 2026. Act of May 24, 2024, ch 123, art. 4, § 21, 2024 Minn. Laws 2215, 2271.

branch." *Id.*, subd. 5(d). The Act also indicates that the "court may summarily deny an application" and lists several scenarios when summary denial is permissible: (1) the application does not contain the required identifying and procedural information or brief statement explaining the applicant's entitlement to relief; (2) "the applicant is not in the custody of the commissioner of corrections or under court supervision"; (3) the applicant was not convicted for first-degree or second-degree felony murder committed before August 1, 2023; (4) "the issues raised in the application are not relevant to the relief available under this section or have previously been decided by the court of appeals or the supreme court in the same case"; or (5) situations where the applicant has already applied and that prior application was denied for a reason other than lacking the required identifying or procedural information and statement of entitlement to relief. *Id.*, subd. 5(e)(1)–(4), (f).

If the judge determines "there is not a reasonable probability that the applicant is entitled to relief, the judge shall send notice to the applicant and the applicant's attorney, if any," with a "brief statement explaining the reasons" for the judge's determination. *Id.*, subd. 5(h). This notice comes in the form of an order denying the application and it ends the applicant's petition process under the Act. *See, e.g.*, *State v. Griffin* (*Griffin IV*), 20 N.W.3d 57, 59–60 (Minn. 2025) (order) (holding a district court's notice denying an applicant's preliminary application is a "final order"). If the judge determines "there is a reasonable probability that the applicant is entitled to relief," the individual has 60 days to file a petition to vacate the felony murder conviction. The Act, subds. 5(g), 6(a). The State

then files its support or opposition, and the court issues an order scheduling the matter for sentencing, scheduling a hearing, or denying the petition. *Id.*, subd. 6(c)–(e).

### Zielinski's Preliminary Application for Relief under the Act

Zielinski filed a preliminary application for relief under the Act in Anoka County in September 2024. In the application she stated that she "did not cause Henderson's death," she "did not intentionally aid [her brother] with the intent to cause Henderson's death," and "[t]here is no evidence that Zielinski intended to cause the death of a human being."

The district court signed a form order titled "Order Summarily Denying Preliminary Application for Relief (Aid/Abet Felony Murder)." In the form order, under the heading "There is NOT a reasonable probability that the applicant (defendant) is entitled to relief, because," there are six options. The court selected the option "Based on the underlying facts, Defendant is not entitled to relief under the Act[]." The court explained its determination, reasoning that Zielinski "qualifies as a 'major participant' because she planned the robbery" and instructed her brother to bring a gun that "ultimately caused the victim's death," and that Zielinski "also acted with extreme indifference to human life when she continued on with the robbery while leaving the victim lying on the floor suffering from a gunshot wound."

Zielinski filed a motion asking the district court to reconsider its order because the court evaluated her preliminary application under the standard for a second-degree felony murder conviction rather than a first-degree felony murder conviction.[6] The district court

---

[6] Under the Act, there are different standards for entitlement to relief from first-degree felony murder and second-degree felony murder. The Act, subd. 7(a)–(b). A petitioner

10

granted Zielinski's motion to reconsider and again signed a form order titled "Order Summarily Denying Preliminary Application for Relief (Aid/Abet Felony Murder)," concluding that based on the underlying facts in her case, there was not a reasonable probability that Zielinski is entitled to relief. Specifically, the court wrote:

> Based on the allegations in the record, [Zielinski] did intentionally aid, advise, and counsel another with the intent to cause the death of a human being because she planned the robbery and instructed her co-defendant to bring a deadly weapon, a gun with them, which ultimately caused the victim's death. In addition, [Zielinski] intentionally conspired with another with the intent to cause the death of a human being because she continued on with the robbery while leaving the victim lying on the floor suffering from a gunshot wound.

On November 19, 2024, Zielinski filed a notice of appeal. After first staying the appeal pending our final decision in *Griffin IV* (which raised a jurisdictional issue), we lifted the stay and accepted jurisdiction over Zielinski's appeal.

## ANALYSIS

On appeal, Zielinski argues that the district court committed reversible error by summarily denying her preliminary application for a reason outside those enumerated in the Act, subdivision 5(e)–(f). We agree that under the plain language of the Act, the district court abused its discretion and that reversal and remand is required. We also interpret

---

who was convicted of first-degree felony murder is entitled to relief if they show by a preponderance of the evidence that they "(1) did not cause the death of a human being; and (2) did not intentionally aid, advise, hire, counsel, or conspire with or otherwise procure another with the intent to cause the death of a human being." *Id.*, subd. 7(a). A petitioner who was convicted of second-degree felony murder is entitled to relief if they show by a preponderance of the evidence that they "(1) did not cause the death of a human being; and (2) w[ere] not a major participant in the underlying felony and did not act with extreme indifference to human life." *Id.*, subd. 7(b).

"reasonable probability that the applicant is entitled to relief" and clarify whether a district court can make credibility determinations without first holding an evidentiary hearing.

I.

We review the denial of a preliminary application under the Act for abuse of discretion. *State v. Griffin* (*Griffin V*), 24 N.W.3d 247, 254 (Minn. 2025). A district court abuses its discretion when it bases its decision "on an erroneous view of the law or [it] is against logic and the facts in the record." *Id.* at 255 (citation omitted) (internal quotation marks omitted). We review a district court's legal conclusions de novo. *Id.*

As we discussed above, the Act empowers the reviewing judge to "summarily deny" a preliminary application in certain scenarios. The Act, subd. 5(e)–(f). Under subdivision 5(e), the reviewing court "may summarily deny an application" if:

> (1) the application does not contain the information required under subdivision 4, paragraph (a);
> (2) the applicant is not in the custody of the commissioner of corrections or under court supervision;
> (3) the applicant was not convicted of a violation of Minnesota Statutes, section 609.185, paragraph (a), clause (3), or 609.19, subdivision 2, clause (1), for crimes committed before August 1, 2023; or
> (4) the issues raised in the application are not relevant to the relief available under this section or have previously been decided by the court of appeals or the supreme court in the same case.

*Id.*, subd. 5(e). Subdivision 5(f) provides that the court "may also summarily deny an application" when the applicant has previously filed a preliminary application for the same conviction. *Id.*, subd. 5(f). Because this case concerns Zielinski's first and only preliminary application for relief under the Act based on her first-degree felony murder

conviction, the grounds for summary denial enumerated in subdivision (f) are not applicable here.

A reviewing judge can deny a preliminary application without *summarily* denying it. We distinguished between denying and summarily denying a preliminary application in *Griffin V*. *See* 24 N.W.3d at 251 n.4. There, the district court denied, but "did not summarily deny," Griffin's preliminary application based on a finding that "there is no reasonable probability that [Griffin's] application is entitled to relief under [the Act]." *Id.* at 251 n.4, 255 (internal quotation marks omitted). Accordingly, we "express[ed] no opinion on the applicability of subd. 5(e) of the Act to Griffin's application." *Id.* at 251 n.4 (noting the Act "permits the reviewing judge to 'summarily deny an application' in some cases," citing subdivision 5(e)).

Whether a reviewing judge can summarily deny a preliminary application for a reason outside those listed under the Act, subdivision 5(e) and (f), is an issue of first impression and a question of statutory interpretation that we review de novo. *See Roberts v. State*, 945 N.W.2d 850, 853 (Minn. 2020). The goal of statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16; *Roberts*, 954 N.W.2d at 853. "We begin our analysis with the relevant statutory text because the plain language of the statute is our best guide to the Legislature's intent." *State v. Latino*, 15 N.W.3d 654, 659 (Minn. 2025) (citation omitted) (internal quotation marks omitted). If there is "only one reasonable way to read the text," the statute is unambiguous, and we enforce the statute's plain meaning. *State v. Fugalli*, 967 N.W.2d 74, 77 (Minn. 2021); *see also Latino*, 15 N.W.3d at 659. If the statutory language is ambiguous, we apply the canons

of construction to determine the statute's meaning. *State v. Moore*, 10 N.W.3d 676, 680 (Minn. 2024).

Here, we apply the canon of interpretation *expressio unius est exclusio alterius*—which means "the expression of one thing is the exclusion of another"—to determine the plain meaning of the statute. *See, e.g.*, *State v. Smith*, 899 N.W.2d 120, 123–24 (Minn. 2017) (citation omitted) (internal quotation marks omitted). This canon "creates a presumption that an omission in a statute is by deliberate choice, not inadvertence," and this "presumption is particularly strong when . . . a statute is uncommonly detailed and specific." *Id.* (citation omitted) (internal quotation marks omitted). The Legislature was very specific in the Act, subdivision 5(e), regarding when the reviewing judge "may summarily deny" an application that, like Zielinski's, is the applicant's first preliminary application for relief from a particular felony murder conviction. The Legislature listed only four bases for a summary denial of a first-time application in subdivision 5(e): (1) the application lacked required information, (2) the applicant is not subject to custody or court supervision, (3) the applicant was not convicted of first- or second-degree felony murder before August 1, 2023, or (4) the application raises issues that are irrelevant to relief under the Act or have already been decided by a state appellate court. The Act, subd. 5(e)(1)–(4). Therefore, there is a strong presumption that the Legislature omitted any other grounds for summary denial "by deliberate choice." *Smith*, 899 N.W.2d at 123 (citation omitted) (internal quotation marks omitted). Given this strong presumption, we conclude that a reviewing judge may not summarily deny a first-time preliminary application for a reason other than those enumerated in subdivision 5(e).

14

Here, the reviewing judge summarily denied Zielinski's preliminary application because "there is not a reasonable probability that [Zielinski] is entitled to relief" "[b]ased on the underlying facts" of the case. This reason is not one of those enumerated in subdivision 5(e). Accordingly, the reviewing judge abused its discretion by basing its decision to summarily deny Zielinski's preliminary application "on an erroneous view of the law" and therefore a reversal and remand is required in this case. *Griffin V*, 24 N.W.3d at 255 (citation omitted) (internal quotation marks omitted).

## II.

## A.

We next consider the meaning of the statutory phrase "a reasonable probability that the applicant is entitled to relief."[7] Once a district court receives an applicant's preliminary application, the reviewing judge must determine whether, in the judge's discretion, there is a "reasonable probability" that the applicant is entitled to relief under the Act. The Act, subd. 5(c). To make this determination, "the reviewing judge shall consider the preliminary application and any materials submitted with the preliminary application and may consider relevant records in the possession of the judicial branch." *Id.*, subd. 5(d). If the reviewing court concludes that the applicant has no reasonable probability of meeting this burden, then the court sends notice to the applicant denying the application. *Id.*, subd.

---

[7]    We note that subdivision 5(c) of the Act uses the word "application," whereas subdivisions 5(f)–(h) and 6(e)(2) use the word "applicant." *Compare* the Act, subd. 5(c) ("shall determine whether, in the discretion of that judge, there is a reasonable probability that the application is entitled to relief"), *with* the Act, subds. 5(f)–(h), 6(e)(2) ("reasonable probability that the applicant is entitled to relief"). For the purposes of our analysis in this case, this distinction is immaterial.

5(h); *c.f. Griffin V*, 24 N.W.3d at 252 (describing a district court's denial of a preliminary application under the Act, subd. 5(h)).

The interpretation of the phrase "a reasonable probability that the applicant is entitled to relief" is both an issue of first impression and a question of statutory interpretation that we review de novo. *See Roberts*, 945 N.W.2d at 853. "[T]echnical words and phrases and such others as have acquired a special meaning . . . are construed according to such special meaning[.]" Minn. Stat. § 645.08, subd. 1; *see also State v. Steeprock*, 28 N.W.3d 417, 439 (Minn. 2025). When "a technical legal term . . . is used in a legal sense, we consider the definition provided by a legal dictionary." *Steeprock*, 28 N.W.3d at 439. We then apply the definition "in the context of the statute." *Fordyce v. State*, 994 N.W.2d 893, 897, 899 (Minn. 2023).

"Reasonable probability" is part of the legal standard district courts use to determine whether an applicant moves past the preliminary application stage under the Act. The Act, subd. 5(c), (g)–(h). It is "a technical legal term that is used in a legal sense," and we therefore consider the definition of "reasonable probability" provided in *Black's Law Dictionary*. *See Steeprock*, 28 N.W.3d at 439. *Black's Law Dictionary* defines "reasonable probability" as "[t]he extent to which rational people might believe that a given possible outcome might materialize." *Probability*, *Black's Law Dictionary* (12th ed. 2024) (specifically defining "reasonable probability"). Applying this definition in the negative,

16

no reasonable probability means that no rational person would "believe that a given possible outcome might materialize." *Id.*

This interpretation fits into the context of the statute. The reviewing judge applies the "reasonable probability" standard at the preliminary application stage to determine whether the applicant has a reasonable probability of entitlement to relief under the Act. The Act, subd. 5(c). Ultimately, to be entitled to relief from a first-degree felony murder conviction under the Act, a petitioner must show by a preponderance of the evidence that they "did not cause the death of a human being" and did not "intentionally aid, advise, hire, counsel, or conspire with or otherwise procure another with the intent to cause the death of a human being." The Act, subd. 7(a); *Griffin V*, 24 N.W.3d at 251. So, reasonable probability of entitlement to relief must be something less than the ultimate preponderance of the evidence standard. Applying the *Black's Law Dictionary* definition of "reasonable probability" at the preliminary application stage provides a lower standard of proof than the ultimate preponderance of the evidence standard required to prevail.

Therefore, a preliminary application for relief from first-degree felony murder must allege facts that would cause a rational person to believe that at an evidentiary hearing, the applicant might be able to prove by a preponderance of the evidence that they neither caused nor intentionally aided, advised, hired, counseled, or conspired with or otherwise procured another with the intent to cause the death of a human being. Put differently, the reviewing judge can only determine that there is *not* a reasonable probability that the applicant is entitled to relief if the application, materials, and relevant records would cause *no* rational person to believe that that at an evidentiary hearing, the applicant might be able

17

to prove by a preponderance of the evidence that they neither caused nor intentionally aided, advised, hired, counseled, or conspired with or otherwise procured another with the intent to cause the death of a human being.

B.

We next apply this reasonable probability standard to the facts alleged in Zielinski's preliminary application. Although we could remand without doing so, we choose to reach the issue "[i]n the interest of judicial economy" because the district court made a determination as to reasonable probability, the parties briefed and argued the issue, and we can resolve it on the record presented, which here includes the preliminary application and any material submitted with it. *See Herlache v. Rucks*, 990 N.W.2d 443, 453–54 (Minn. 2023) (resolving rather than remanding an issue that "both parties discussed . . . in their briefs and at oral argument, and the record is sufficient for us to examine"). We conclude that a rational person would believe that at an evidentiary hearing, Zielinski might be able to prove by a preponderance of the evidence that she neither caused nor intentionally aided, advised, hired, counseled, or conspired with or otherwise procured another with the intent to cause the death of a human being. In her preliminary application, Zielinski alleged that she "did not cause Henderson's death" and that she "did not intentionally aid [her brother] with the intent to cause Henderson's death." And unlike the allegations in Griffin's preliminary application, Zielinski's allegations were not considered and directly rejected in her previous criminal proceedings or appeal.[8] *See Griffin V*, 24 N.W.3d at 255–56

---

[8] Where the "facts established at trial," or a prior appellate court holding, directly contradict an applicant's factual allegations in the preliminary application, the reviewing

18

(concluding that the allegation that Griffin was not the shooter was considered and directly rejected in his previous criminal proceedings or appeal). Because the issue of whether Zielinski aided her brother with an intent to cause Henderson's death was not litigated in her previous criminal proceedings or appeal and because the facts alleged in Zielinski's preliminary application would cause a rational person to believe that at an evidentiary hearing, she might be able to prove by a preponderance of the evidence that she neither caused nor intentionally aided, advised, hired, counseled, or conspired with or otherwise procured another with the intent to cause the death of a human being, Zielinski satisfied the "reasonable probability that the applicant is entitled to relief" requirement.

III.

Finally, we clarify that in considering a request for relief under the Act, a district court cannot make credibility determinations without first holding an evidentiary hearing as provided by subdivision 6 of the Act.

We have held that district courts cannot make credibility determinations in postconviction proceedings "without first holding an evidentiary hearing." *Andersen v. State*, 913 N.W.2d 417, 424 (Minn. 2018). Without an evidentiary hearing, the court

---

judge need not accept as true allegations in the preliminary application. *Griffin V*, 24 N.W.3d at 255–56. In this context, consideration of other judicial records does not violate the bright line rule announced in *State v. Duol*, 25 N.W.3d 135, 142 (Minn. 2025) (explaining that judges may not engage in "independent investigations of extra-record facts"), because the Legislature explicitly empowered a district court judge reviewing a preliminary application for relief under the Act to consider "relevant records in the possession of the judicial branch." The Act, subd. 5(d). The reviewing judge's authorized consideration of these records, then, does not reflect a lack of impartiality and is not an impermissible "independent investigation" under *Duol*.

"cannot make a judgment about which story is true and which is false." *Wilson v. State*, 726 N.W.2d 103, 107 (Minn. 2007). The opportunity to observe a witness during an evidentiary hearing puts the district court "in the best position to evaluate witness credibility." *Bobo v. State*, 860 N.W.2d 681, 685 (Minn. 2015) (citation omitted) (internal quotation marks omitted). Indeed, we regularly defer to district courts' credibility determinations for this reason. *See Miles v. State*, 840 N.W.2d 195, 201 (Minn. 2013); *Hooper v. State*, 838 N.W.2d 775, 784–85 (Minn. 2013). For similar reasons, we hold that district courts reviewing a preliminary application for relief under the Act also cannot make credibility determinations because they have not yet conducted an evidentiary hearing— which is provided for under subdivision 6 of the Act after the reviewing judge has determined there is a reasonable probability the applicant is entitled to relief.

Zielinski alleged in her preliminary application that she did not aid her brother with an intent to cause the death of a human being. In its order summarily denying Zielinski's application, the district court relied on circumstantial evidence that included Zielinski planning the robbery, telling her brother to bring a gun, and failing to help Henderson after the shooting. Implicit in the district court's analysis is a determination that Zielinski's allegation that she did not aid her brother with an intent to cause the death of a human being was not credible. This credibility determination was impermissible because it was made

20

without observing Zielinski's demeanor during testimony presented at an evidentiary hearing on the issue of her intent.[9]

* * *

A reversal and remand is required in this case because the district court abused its discretion when it summarily denied Zielinski's preliminary application based on a reason not enumerated in the Act. We further clarify that the phrase "a reasonable probability that the applicant is entitled to relief" requires applicants convicted of first-degree felony murder to allege facts that would cause a rational person to believe that at an evidentiary hearing, the applicants might be able to prove by a preponderance of the evidence that they neither caused nor intentionally aided, advised, hired, counseled, or conspired with or otherwise procured another with the intent to cause the death of a human being. We apply this standard and hold that Zielinski satisfied the "reasonable probability that the applicant

---

[9] Unless the allegations in a preliminary application or petition that the defendant did not cause the death of a human being and did not intentionally aid another with the intent to cause the death of a human being were considered and directly rejected in the applicant's previous criminal proceedings or appeal, a district court's consideration of the application or petition should not look backwards at earlier proceedings in which the issue of whether the applicant aided with an intent to cause the death of a human being was not litigated. *See Griffin V*, 24 N.W.3d at 255–56 (examining earlier proceedings because the district court denied the preliminary application based on facts established at trial and discussed in prior appeals); the Act, subd. 5(e)(4) (allowing district courts to summarily deny preliminary applications when "the issues raised in the application . . . [h]ave previously been decided by the court of appeals or the supreme court in the same case"). The court should instead look forward to the question of whether, at an evidentiary hearing, the applicant might be able to present evidence, including personal testimony regarding their intent, that satisfies the applicant's burden of proving by a preponderance of the evidence that they neither caused nor intentionally aided, advised, hired, counseled, or conspired with or otherwise procured another with the intent to cause the death of a human being. When the alleged facts present a question of credibility, a district court must not resolve the credibility question without first holding an evidentiary hearing.

is entitled to relief" requirement. We also clarify that in considering a request for relief under the Act, a district court cannot make credibility determinations without first holding an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the district court and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.